**HAWO BADAL;**
**NAGAD MOHAMED;**
**AMINO SALEH;**
**MAHDIYA MOHAMED;**                                 Case No. 17-cv-1704
**IBRAHIM ABDI MEHAMMED;**
**AMINA ABDILE;**
**HIJAS ABDI;**
**MOHAMED MOHAMUD;**
**ABDIWALI ABDULKADIR;**
**ABDINUR HUSSEIN;**
**NIMO ABDI;**
**MUNA MAHAMED;**
**MUSTAFE IBRAHIM;**
**ISTAHIL MOHAMMUD;**
**ABDULAHI MOHAMED;**
**RAHMO ABDI;**
**HABIBA ISSACK;**
**SAGAL DUNKAL;** and,
**MAQDAS ABDIKADER;**

       Plaintiffs,

v.

**ARIENS COMPANY**, a
Wisconsin Domestic Business;

       Defendant.

_____/

## FIRST AMENDED COMPLAINT

Plaintiffs, by and through their attorneys, CAIR Legal Defense Fund ("CAIR"), bring

this Complaint against Defendant **ARIENS COMPANY**, for compensatory and punitive

damages; declaratory and injunctive relief, including payment of full back pay; prejudgment

and post-judgment interest; costs; and attorneys' fees for violations of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and 42 U.S.C. § 1981, committed when Defendant Ariens Company:

1. Terminated and refused to continue to provide a reasonable accommodation that was in place that allowed Plaintiffs to take short breaks to accommodate Plaintiffs' sincerely-held religious beliefs and practices that require them to perform obligatory prayers during specified time frames throughout the day;

2. Forced Plaintiffs to choose between:

   a. violating their core religious beliefs by not performing their obligatory prayers to maintain their employment,

   b. continuing to adhere to their religious beliefs and performing their obligatory prayers thereby placing them on track for eventual termination, or

   c. resigning their employment in order to continue to adhere to their religious beliefs.

## Jurisdiction and Venue

3. Plaintiffs' claims for discrimination on the basis of race, religion and national origin, retaliation, and hostile work environment in violation of Title VII are brought pursuant to 42 U.S.C. § 2000(e) *et seq*.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1343, 42 U.S.C. § 1981 and federal common law.

5. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin.

6. This Court has personal jurisdiction over Defendant because Defendant conducts business in the State of Wisconsin.

7. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8. This action seeks permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, 26 U.S.C. § 134, 42 U.S.C. § 1981 and pursuant to the general, legal and equitable powers of this Court.

9. Costs and attorneys' fees may be awarded pursuant to Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; and under 42 U.S.C. § 1988.

10. Venue is proper pursuant to 28 U.S.C. § 1391 as to Defendant because Defendant conducts business in this judicial district and this district is where a substantial part of the events or omissions giving rise to the claims occurred.

## Parties

11. Plaintiff Hawo Badal is an American Black Muslim of Somali national origin residing within this district. Badal was at all relevant times an "employee" as the term is defined by Title VII.

12. Plaintiff Nagad Mohamed is an American Black Muslim of Somali national origin residing within this district. Mohamed was at all relevant times an "employee" as the term is defined by Title VII.

13. Plaintiff Amino Saleh is an American Black Muslim of Somali national origin residing within this district. Saleh was at all relevant times an "employee" as the term is defined by Title VII.

3

**14.**     Plaintiff Mahdiya Mohamed is an American Black Muslim of Somali national origin residing within this district.  Mohamed was at all relevant times an "employee" as the term is defined by Title VII.

**15.**     Plaintiff Ibrahim Abdi Mehammed is an American Black Muslim of Somali national origin residing within this district.  Mehammed was at all relevant times an "employee" as the term is defined by Title VII.

**16.**     Plaintiff Amina Abdile is an American Black Muslim of Somali national origin residing within this district.  Abdile was at all relevant times an "employee" as the term is defined by Title VII.

**17.**     Plaintiff Hijas Abdi is an American Black Muslim of Somali national origin residing within this district.  Abdi was at all relevant times an "employee" as the term is defined by Title VII.

**18.**     Plaintiff Mohamed Mohamud is an American Black Muslim of Somali national origin residing within this district.  Mohamud was at all relevant times an "employee" as the term is defined by Title VII.

**19.**     Plaintiff Abdiwali Abdulkadir is an American Black Muslim of Somali national origin residing within this district.  Abdulkadir was at all relevant times an "employee" as the term is defined by Title VII.

**20.**     Plaintiff Abdinur Hussein is an American Black Muslim of Somali national origin residing within this district.  Hussein was at all relevant times an "employee" as the term is defined by Title VII.

21.     Plaintiff Nimo Abdi is an American Black Muslim of Somali national origin residing within this district.  Abdi was at all relevant times an "employee" as the term is defined by Title VII.

22.     Plaintiff Muna Mahamed is an American Black Muslim of Somali national origin residing within this district.  Mahamed was at all relevant times an "employee" as the term is defined by Title VII.

23.     Plaintiff Mustafe Ibrahim is an American Black Muslim of Somali national origin residing within this district.  Ibrahim was at all relevant times an "employee" as the term is defined by Title VII.

24.     Plaintiff Istahil Mohammud is an American Black Muslim of Somali national origin residing within this district.  Mohammud was at all relevant times an "employee" as the term is defined by Title VII.

25.     Plaintiff Abdulahi Mohamed is an American Black Muslim of Somali national origin residing within this district.  Mohamed was at all relevant times an "employee" as the term is defined by Title VII.

26.     Plaintiff Rahmo Abdi is an American Black Muslim of Somali national origin residing within this district.  Abdi was at all relevant times an "employee" as the term is defined by Title VII.

27.     Plaintiff Habiba Issack is an American Black Muslim of Somali national origin residing within this district.  Issack was at all relevant times an "employee" as the term is defined by Title VII.

**28.**     Plaintiff Sagal Dunkal is an American Black Muslim of Somali national origin residing within this district.  Dunkal was at all relevant times an "employee" as the term is defined by Title VII.

**29.**     Plaintiff Maqdas Abdikader is an American Black Muslim of Somali national origin residing within this district.  Abdikader was at all relevant times an "employee" as the term is defined by Title VII.

**30.**     Defendant Ariens Company is a for-profit corporation incorporated under the laws of Wisconsin.  Ariens Company's headquarters and principal place of business is located at 655 W. Ryan Street, Brillion, Wisconsin.  Defendant Ariens Company regularly and systematically conducts business in the State of Wisconsin.  Defendant Ariens Company was at all relevant times an "employer" as the term is defined in Title VII.

### Administrative History

**31.**     Plaintiffs have all exhausted their administrative remedies.

**32.**     Each of the Plaintiffs filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

**33.**     The EEOC issued a letter of "Dismissal and Notice of Rights" to each of the Plaintiffs, dated September 7, 2017.

**34.**     This Complaint is being timely filed within 90 days from the date each of the Plaintiffs received the Dismissal and Notice of Rights from the EEOC.

### Background

**35.**     Each of the Plaintiffs are practicing Muslims.

36.     In accordance with their sincerely-held religious beliefs, each of the Plaintiffs perform obligatory prayers five times a day throughout the day during prescribed time frames.[1]

37.     Prior to accepting their job offers, several, if not all, of the Plaintiffs asked whether Defendant would allow them to perform their obligatory prayers during their shifts should the need arise.

38.     Defendant's management reassured Plaintiffs that they would provide a religious accommodation that allowed Plaintiffs to pray during their shifts if a prescribed time frame should fall during their shifts.

39.     Additionally, at the time that Plaintiffs were first hired, they formally requested a religious accommodation from management to allow them to perform their obligatory prayers.

40.     At that time, Plaintiffs also advised management that, in accordance with their sincerely-held beliefs, they were required to perform their prayers during prescribed time frames, that those time frames may fall during their shifts, and that accordingly, they would need to take short breaks during their shifts to fulfill their religious obligations and perform their prayers.

---

[1]     *Salah*, or prayer, is a daily ritual enjoined upon all Muslims as one of the five "Pillars of Islam." It is performed five times a day by all Muslims. Muslims are required to perform their prayers during certain prescribed time frames throughout the day: (1) between first light and sunrise, (2) after the sun has passed the middle of the sky, (3) between mid-afternoon and sunset, (4) between sunset and the last light of day, and (5) between darkness and first light. Each prayer may take on average 5 minutes. Muslims are also required to perform ablution to cleanse themselves prior to performing their obligatory prayers. The prayer schedule Muslims are required to follow is available at the following website: http://www.islamicity.org/PrayerTimes/.

41.     Defendant's management granted Plaintiffs' religious accommodation requests and permitted them to take short breaks during their shifts, two at a time, to allow them to perform their prayers.

42.     In fact, the short breaks that were approved by management for Plaintiffs and the rest of Defendant's Muslim employees that requested a religious accommodation were in line with a company-wide policy that allows all employees to take short breaks during their shifts for nonreligious purposes, including, but not limited to, using the restroom, smoking, making a phone call or purchasing a snack.

43.     The religious accommodation worked smoothly and without causing any problems.

44.     In fact, no burden of any kind was placed on Defendant's business by this grant of religious accommodation.

45.     Employees that take short breaks during their shifts for nonreligious purposes are not subjected to disciplinary action from their supervisors.

46.     Upon information and belief, Defendant's management treated breaks for nonreligious purposes more favorably than breaks for religious purposes.

47.      On or about some time in December 2015, Defendant's management held a meeting with all the Somali Muslim employees employed by Defendant, and only the Somali Muslim employees, including these Plaintiffs, and announced that the religious accommodation that permitted them to take short breaks to perform their obligatory prayers would be revoked, effective January 25, 2016.

48.     The Somali Muslim employees, including these Plaintiffs, protested the revocation and immediately expressed concern that the company-wide pre-existing

8

scheduled breaks did not coincide with the prescribed time-frame to perform their obligatory daily prayers.

49.     Defendant's management responded that they had to choose between continuing to perform their prayers during their shifts and have their employment terminated and performing their prayers during the company-wide pre-existing scheduled breaks.

50.     All the Somali Muslim workers, including these Plaintiffs, walked out of the meeting and did not return to work that day as a form a peaceful protest against the forthcoming policy change and to express concern that their reasonable religious accommodation would be rescinded.

51.     Several Somali Muslim workers, including some of the Plaintiffs, resigned their employment that day in anticipation of the revocation of their religious accommodation.

52.     On January 14, 2016, Defendant's management again held a meeting with all the Somali Muslim employees employed by Defendant, and only the Somali Muslim employees, including these Plaintiffs, and again advised that the religious accommodation that permitted them to take short breaks to perform their obligatory prayers would be revoked, effective January 25, 2016.

53.     During that meeting, Defendant's management advised the Somali Muslim employees that were present that they would only be permitted to perform their obligatory prayers during the company-wide pre-existing scheduled breaks.

54.     The Somali Muslim employees, including these Plaintiffs, again expressed concern that the company-wide pre-existing scheduled breaks did not coincide with the prescribed time-frame to perform their obligatory daily prayers.

9

**55.**     Defendant's management responded that they had to choose between continuing to perform their prayers during their shifts and have their employment terminated and performing their prayers during the company-wide pre-existing scheduled breaks.

**56.**     The Somali Muslim employees, including these Plaintiffs, attempted to negotiate the continuance of their religious accommodation.

**57.**     They requested to shift their pre-existing scheduled breaks to a time that aligned with the prescribed prayer times; however, Defendant's management declined to consider this option.

**58.**     They also offered to clock out during their short breaks, to take breaks one at a time, and to work overtime; however, Defendant's management declined to consider any of these options either.

**59.**     Defendant's management concluded the meeting by encouraging the Somali Muslim employees, including these Plaintiffs, to voluntarily resign their employment.

**60.**     Defendant's management distributed to the Somali Muslim employees present State of Wisconsin Department of Workforce Development forms and accompanying documents that provided instruction on how to apply for unemployment benefits.  They also provided the employees with the same documents translated in the Somali language.

**61.**     Defendant's management falsely suggested that the employees that choose to resign their employment should apply for unemployment benefits, which they would not contest.

**62.**     On the other hand, Defendant's management advised the Somali Muslim employees, including these Plaintiffs, that with regards to the employees that choose not to

voluntarily resign their employment, if they take an unscheduled break to perform their obligatory prayers or if they even request a religious accommodation, their employment would be terminated and Defendant would contest their employment benefits.

63.     From the period of approximately January 20, 2016 to January 25, 2016, Defendant's management met with all the Somali Muslim employees, including these Plaintiffs, on three separate occasions and reiterated that if they continue to request prayer accommodations, Defendant will terminate their employment and they would not receive any paid time off ("PTO").

64.     Moreover, Defendant's management also told all the Somali Muslim employees, including these Plaintiffs, that if they choose to voluntarily resign, they would receive eighty (80) hours of PTO and Defendant would not challenge their applications for unemployment benefits.

65.     On January 25, 2016, several Somali Muslim employees, including several Plaintiffs, resigned their employment because they did not want to sacrifice their core religious beliefs.

66.     Beginning on January 25, 2016, each time any Somali Muslim employee, including these Plaintiffs, requested to take an unscheduled short break to pray, their supervisors would give them verbal permission to take the break.

67.     However, upon returning to their shift, Plaintiffs would receive a warning slip from Defendant's Manufacturing Leader that threatened disciplinary action.  The warning slip stated:

> The Company's policy provides employees the opportunity to take breaks for prayer or other activities during the two scheduled breaks per shift.   Any pattern of repeated,

unscheduled breaks is not allowed.  Therefore, I need to ask you to return to your work station.  If you continue to violate the Company policy and leave work without permission, you will be subject to disciplinary action.

**68.**     However, several Somali Muslims, including some of the Plaintiffs, were issued termination letters on January 25, 2016, whether or not they requested to take a short, unscheduled prayer break.

**69.**     Additionally, supervisors monitored all Somali Muslim workers, including the Plaintiffs that were still employed, that requested short breaks to use the restroom to ensure that they did not perform their obligatory prayers during their restroom break.

**70.**     Defendant's management also segregated all Somali Muslim workers, including the Plaintiffs that were still employed, in an apparent but discriminatory attempt to ease the process of enforcing their ban on religious breaks.

**71.**     Later that day, two of the Plaintiffs met with Defendant's Manufacturing Leader on behalf of the rest of the Somali Muslim workers in an attempt to negotiate once again the revocation of the religious accommodation policy.

**72.**     During that meeting, the two Plaintiffs advised Defendant's Manufacturing Leader that supervisors were verbally approving requests for short, unscheduled prayer breaks, but then upon returning, the Somali Muslim workers would receive warning slips threatening disciplinary action.

**73.**     Defendant's Manufacturing Leader responded that he would issue them a total of three or four warnings so that Defendant would be forced to make a "bad decision" regarding their employment.

**74.** Defendant's Manufacturing Leader then instructed the two Plaintiffs to sign a "Resignation Notice Form" and write that the reason for the separation was due to a "conflict with company policy and my faith."

**75.** Defendant's Manufacturing Leader then warned the two Plaintiffs that if they did not sign the form, then Defendant would subject them to some form of "punishment."

**76.** When the two Plaintiffs inquired into what he meant by "punishment," Defendant's Manufacturing Leader stated that Defendant would place "something negative" in their employment records, reject their unemployment benefits applications, and that their "future employability with other companies would be at risk."

**77.** Based on Defendant's Manufacturing Leader's statements, the two Plaintiffs signed the "Resignation Notice Form," which indicated that day as the last date of their employment with Defendant.

**78.** On February 1, 2016, at approximately 3:30 p.m., Defendant's management personnel called the Somali Muslim employees to a meeting, including seven of the Plaintiffs.

**79.** Defendant's management personnel told the employees that they were "troublemakers" and that if they continued to request breaks to perform their prayers, their employment would be terminated.

**80.** During the meeting, Defendant's Manufacturing Leader told the Somali Muslim employees, including seven of the Plaintiffs, that they were required to sign a document acknowledging that they violated company policy and that if they continued to request religious accommodation, they would be discharged.

**81.** All the Somali Muslim employees, including the seven Plaintiffs, refused to sign the document and were subsequently released from the meeting.

**82.**   Later that day, the Plaintiffs, in addition to the other Somali Muslim workers that were still employed, again requested permission from their supervisors to take a short, unscheduled break to perform their obligatory prayers.

**83.**   At approximately 6:00 p.m. that day, Defendant's Manufacturing Leader called the same individuals for a second meeting.

**84.**   During that second meeting, Defendant's Manufacturing Leader again told the individuals present, including seven of the Plaintiffs, that because they did not follow the new policy, Defendant was terminating their employment.

**85.**   Defendant's Manufacturing Leader demanded they turn in their identification badges and leave the premises immediately.

**86.**   A police officer was present during the meeting, and escorted them out of the building.

**87.**   All the individuals present, including the seven Plaintiffs, later received termination letters from Defendant that indicated February 1, 2016 as their last date of employment with Defendant.

**88.**   The remaining Plaintiffs continued to request permission to pray from their respective supervisors and received verbal or written warnings for doing so, until their employment was terminated by Defendant.

**89.**   Defendant acted in conscious disregard of or reckless indifference to the Somali Muslim employees and these Plaintiffs' rights to be free from religious discrimination and/or retaliation, knowing full well that Title VII and its Wisconsin counterpart (WFEA) required, unless excused by undue hardship, reasonable accommodation of their employee's sincerely-held religious beliefs and practices and protected opposition to employment

decisions which were sincerely and reasonably believed to be in violation of Title VII and its Wisconsin counterpart (WFEA) by forcing the Somali Muslim workers and these Plaintiffs to choose between their religion and their employment, revoking their reasonable accommodation, and constructively discharging them and/or terminating their employment.

90.     Defendant acted with malice due to pique at the Somali Muslim workers' and Plaintiffs' opposition and protestation at the revocation of their religious accommodation request.

91.     As a direct and proximate result of Defendant's actions, Plaintiffs have suffered emotional distress, anxiety, humiliation, inconvenience, lost wages and benefits, and other consequential damages.

### Claims for Relief

### COUNT I
### (Discrimination in Violation of Title VII)

92.     Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

93.     Defendant violated Title VII by (1) subjecting Plaintiffs to harassment, intimidation, threats and disciplinary action for exercising their sincerely-held religious beliefs, (2) revoking the original reasonable accommodation of permitting Plaintiffs to take short, unscheduled breaks during their shifts to perform their obligatory prayers, and not providing an alternative reasonable accommodation that would have enabled Plaintiff to adhere to their sincerely-held religious beliefs and practices, even though such an accommodation would not have interfered with business operations, and (3) terminating

Plaintiffs' employment or placing them on track for eventual termination when they insisted on adhering to those beliefs and practices.

WHEREFORE, Plaintiffs request this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT II
### (Retaliation in Violation of Title VII)

**94.** Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

**95.** Defendant committed retaliation in violation of Title VII by subjecting Plaintiffs to harassment, intimidation, threats and disciplinary action for exercising their sincerely-held religious beliefs, and by terminating Plaintiffs or placing them on track for eventual termination for opposing practices they sincerely and reasonably believed were discriminatory.

WHEREFORE, Plaintiffs request this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT III
### (Hostile Work Environment in Violation of Title VII)

42. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

43. Defendant subjected Plaintiffs to a hostile work environment in violation of Title VII by (1) subjecting Plaintiffs to harassment, intimidation, threats and disciplinary action for exercising their sincerely-held religious beliefs, (2) revoking the original

reasonable accommodation of permitting Plaintiffs to take short, unscheduled breaks during their shifts to perform their obligatory prayers, and not providing an alternative reasonable accommodation that would have enabled Plaintiff to adhere to their sincerely-held religious beliefs and practices, even though such an accommodation would not have interfered with business operations, and (3) terminating Plaintiffs' employment or placing them on track for eventual termination when they insisted on adhering to those beliefs and practices.

WHEREFORE, Plaintiffs request this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT V
## (VIOLATION OF 42 § U.S.C. 1981(c))

42.　　Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

43.　　42 U.S.C. § 1981 provides:

**Equal rights under the law:**
All persons in the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts to sue, be parties, give evidence, to a full and equal benefit of all of laws and proceedings for security persons and property as of enjoyed by white citizens, and shall be subject to like punishment, pains, penalty, taxes, license and exactions of every kind, and to no other.

44.　　42 U.S.C. § 1981 prohibits intentional racial, ethnic and ancestry-based discrimination in the making and enforcing of contracts involving both public and private actors.

17

45.     Defendant violated 42 U.S.C. § 1981 by subjecting Plaintiffs to intentional discrimination by harassing, intimidating, threatening, implementing disciplinary action, and by terminating Plaintiffs or placing them on track for eventual termination on the basis of their race, ethnic background and ancestry, which had the purpose and/or effect of denying Plaintiffs full and equal access to the making of an employer-employee contractual relationship between Plaintiffs and Defendant.

46.     Defendant's above-described conduct caused Plaintiffs to suffer damages in addition to mental anguish, physical and emotional distress, humiliation and embarrassment in violation of 42 U.S.C. § 1981.

47.     Defendant's above-described conduct was discriminatory based on Plaintiffs' race, ethnic background and ancestry and was motivated by racial animus in violation of 42 U.S.C. § 1981.

WHEREFORE, Plaintiffs request this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## **Prayer for Relief**

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against Defendants on each and every count in this Complaint, and enter an Order awarding the following relief:

1.      An injunction prohibiting Defendant from intimidating, harassing and threatening workers based on their race, religion and national origin;

2.      An injunction ordering Defendant to reinstitute a religious accommodation allowing Muslim workers to take short breaks to perform their obligatory prayers during the prescribed time frames;

3.      An injunction requiring Defendant to reinstate Plaintiffs' employment;

4.      Payment for all economic damages, including but not limited to, back pay, front pay, and lost benefits;

5.      Payment for non-economic damages, including emotional harm;

6.      Punitive damages;

7.      Statutory damages;

8.      An award of attorneys' fees, costs, and expenses of all litigation; and,

9.      All such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand trial by jury of the above-referenced causes of action.

Respectfully submitted,

CAIR LEGAL DEFENSE FUND (CAIR)

BY:        /s/ Lena Masri
LENA F. MASRI (DC: 1000019) ‡
GADEIR I. ABBAS (VA: 81161) ‡ *
AHMED M. MOHAMED (LA: 36590)
Attorneys for Plaintiffs
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

‡ *Admitted to practice in this Court*
* *Licensed in VA, not in D.C.  Practice limited to federal matters*

Dated:  April 5, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2018, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Wisconsin using the ECF System, which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

*/s/ Ahmed Mohamed*

Case 1:17-cv-01704-WCG   Filed 04/05/18   Page 21 of 21   Document 11