UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HAWO BADAL, et al.,

               Plaintiffs,

    v.

                                           Case No. 17-C-1704

ARIENS COMPANY,

               Defendant.

## DECISION AND ORDER GRANTING IN PART MOTION TO DISMISS

Plaintiffs, nineteen American Black Muslims of Somali national origin, brought this suit against Defendant Ariens Company, alleging race, national origin, and religious discrimination, retaliation, and a hostile work environment, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and race discrimination, in violation of 42 U.S.C. § 1981. Now before the court is Ariens' motion for partial dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 12. Ariens contends that Plaintiffs have failed to state a claim under either Title VII or Section 1981 for discrimination on account of their race, national origin or ethnic background, and seeks dismissal of their complaint as to those claims. For the reasons explained below, Ariens' motion will be granted in part.

### Rule 12(b)(6) Motion To Dismiss and Rule 8 Pleading Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a pleading. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement

of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Twombly*, the Court rejected the liberal pleading standard of *Conley v. Gibson*, under which a complaint was not to be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561–62 (quoting *Conley*, 355 U.S. 41, 45–46 (1957)). Rather than requiring the defendant to show at the pleading stage that the plaintiff can prove no set of facts to support his claim, *Twombly* held that to survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In so ruling, the Court expressed concern over the cost of discovery, particularly in complex anti-trust litigation of the kind presented in *Twombly* itself. The Court rejected the view that judicial supervision of the discovery process and the availability of summary judgment could effectively curb discovery abuse and expense. *Id.* at 559–60 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management, . . . given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. *See, e.g.*, Easterbrook, *Discovery as Abuse*, 69 B.U. L. Rev. 635, 638 (1989) ('Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves'). And it is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage, much less lucid instructions to juries . . . .") (internal quotations and citations omitted). Based upon these considerations, the Court concluded that "[w]hile a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted).

In *Iqbal*, a civil rights action, the Court made clear that the pleading standard it had announced in *Twombly* was not confined to complaints asserting anti-trust claims but was grounded in the language of Rule 8(a) of the Federal Rules of Civil Procedure: "Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . and it applies to antitrust and discrimination suits alike." 556 U.S. at 684.

*Iqbal* also highlighted "two working principles" underlying *Twombly*. *Id.* at 678. First, the Court noted that the rule requiring the court to accept as true all of the allegations of the complaint did not apply to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Though it acknowledged that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era," the Court emphasized that "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. The second *Twombly* principle the Court highlighted in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court emphasized that determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* While "not akin to a probability requirement," the standard requires "more than a sheer possibility that the defendant acted unlawfully." *Id.* at 678.

These are the principles that must govern the determination of Ariens' motion to dismiss.

## Allegations of First Amended Complaint

According to the First Amended Complaint (FAC), Plaintiffs are all "American Black Muslims of Somali national origin," who are either currently employed by Ariens or were employed at the time in question. FAC, ECF No. 11, at ¶¶ 11–29, 35. Ariens is described simply as a "for-profit corporation" located in Brillion, Wisconsin, and an employer within the meaning of Title VII. *Id.* ¶ 30. By way of background, however, the court notes that Ariens is a manufacturer of lawn mowers, snow blowers and other machines. ARIENS, https://www.ariens.com/en-us (last visited June 13, 2018). In any event, the FAC alleges that, as practicing Muslims and in accordance with their sincerely-held religious beliefs, each Plaintiff performs a prayer ritual five times a day. These prayer rituals take about five minutes and must be performed during prescribed time frames that vary depending upon the position of the sun. Some of the prayer times occur while Plaintiffs are at work. *Id.* ¶¶ 35–36.

At the time they were hired, Plaintiffs requested religious accommodations to allow them to take short breaks during their shifts to perform their daily prayer rituals. Ariens' management assured Plaintiffs that it would provide an accommodation that would allow them short breaks if a prescribed prayer time should fall during their shift. Initially, Ariens did in fact provide the accommodation, and Plaintiffs, two at a time, would take short breaks to perform the ritual. This accommodation was in line with the company-wide policy of allowing employees to take short breaks for a variety of purposes, including to use the restroom, smoke, make a phone call, or purchase a snack. *Id.* ¶¶ 37–42. Plaintiffs allege that the religious accommodation worked smoothly and caused no problems or burdens to the operation of Ariens' business. *Id.* ¶¶ 43–44.

Sometime in December 2015, Ariens' management team held a meeting with all of the Somali Muslim employees, including Plaintiffs, and announced that their religious accommodation would be revoked, effective January 25, 2016. Some of the Somali Muslims, including some Plaintiffs, expressed concern that Ariens' scheduled breaks did not coincide with the times in which they needed to say their prayers. All of the Somali Muslim workers, including Plaintiffs, walked out of the meeting and did not return to work that day in protest of the upcoming change. Some of the workers, including some Plaintiffs, resigned in protest of the revocation of their religious accommodation. *Id.* ¶¶ 47–52.

Between that date and January 25, 2016, Ariens' management met with the Somali Muslims several additional times. At each meeting, management encouraged the employees to voluntarily resign and later explained that they risked being terminated if they continued to take prayer breaks after the accommodation was revoked. Management also informed the Somali Muslims that if they resigned, they could seek unemployment benefits. Instructions on how to apply for such benefits were provided, both in English and in the Somali language. *Id.* ¶¶ 52–64.

Despite this encouragement, some of the Somali Muslims did not resign and continued to work even after the accommodation was revoked on January 25, 2016. Many sought and received verbal permission from their supervisor to perform the prayer ritual. When they returned to their work station, however, they discovered a written warning which threatened disciplinary actions for taking a break in violation of Ariens' new policy. Ariens' management also moved the Somali Muslims into one area to monitor them and ensure they were not requesting bathroom breaks to say their prayers. Again, Ariens' management advised the Somali Muslims to voluntarily resign or they would continue to receive warning slips until a disciplinary action was taken against them. *Id.* ¶¶ 66–69.

On February 1, 2016, Ariens' Manufacturing Leader told several Somali Muslim employees, including seven of the Plaintiffs, to sign a document acknowledging they were violating company policy and that they may be fired if they continued to request the religious accommodation. All of the employees, including the seven Plaintiffs, refused to sign. Later that day, the Manufacturing Leader met with these employees, accused them of being "troublemakers," and terminated them all. Those Plaintiffs who remained employed continued to request permission to perform their prayer ritual and continued to receive verbal or written warnings until their employment was terminated. *Id.* ¶¶ 78–88.

Based on these background factual allegations, the amended complaint asserts four separate claims or counts. Count I asserts a claim of "Discrimination in Violation of Title VII." Count II asserts a claim for "Retaliation in Violation of Title VII." Count III asserts a claim of "Hostile Work Environment in Violation of Title VII." Finally, Count IV (misnumbered V) asserts a claim for "Violation of 42 U.S.C. § 1981(c)." It is to the race and national origin components of Plaintiffs' Title VII claims and their Section 1981 claim that Ariens' motion is directed.

## ANALYSIS

### A. Race and National Origin Discrimination Under Title VII

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Ariens argues that Plaintiffs' Title VII claim, to the extent it is intended to include race or national origin discrimination, should be dismissed because the FAC fails to allege sufficient facts to support a claim for discrimination on those bases. Ariens notes

that the FAC alleges that Plaintiffs resigned or were terminated from their employment because Ariens changed its policy of accommodating the Muslim prayer schedule and Plaintiffs continued to take prayer breaks at unscheduled times during the work day. Although the FAC alleges that the policy accommodating the Muslim prayer schedule created no problems in the workplace, Ariens contends that it changed its policy because it concluded allowing additional and unscheduled breaks throughout the work day caused undue hardships in the form of increased costs of production, reductions in efficiency, and additional burdens on those employees who did not leave the production line for unscheduled breaks. Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 13, at 1. Ariens recognizes that Plaintiffs' allegation that the policy did not cause any problems to its business is sufficient to state a claim under Title VII. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977) (noting that intent and effect of Title VII's definition of religion is "to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees"); *see also* 29 C.F.R. § 1605.2 (Reasonable accommodation without undue hardship as required by § 701(j) of Title VII of the Civil Rights Act of 1964). Ariens contends, however, that there are no facts alleged in the FAC that even suggest the decision to rescind the accommodation had anything to do with Plaintiffs' race or national origin.

In particular, Ariens notes that Plaintiffs have not alleged that Ariens harbored any animus against Plaintiffs based on their race and/or national origin. There is no allegation that Ariens allowed white, non-Somali employees to take breaks at times and for reasons that black Somali employees were denied, or that non-Black and non-Somali employees were exempt from break time monitoring. Nor is there any allegation that Ariens otherwise applied its policies or

disciplined employees for violating its policies in a manner that discriminated against employees based on race or national origin. Def.'s Mem. in Supp. at 4–5. Absent any allegations tying Ariens' decision to rescind the religious accommodation and the actions taken to implement that decision to Plaintiffs' race or national origin, Ariens contends, Plaintiffs are precluded from pursuing race and national origin claims.

In response, Plaintiffs argue that under the minimal pleading standards in employment discrimination cases, it is enough for them to allege that their employer instituted an adverse employment action against them on the basis of their race or national origin. Pls.' Resp. in Opp. to Mot. to Dismiss, ECF No. 15, at 4 (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Plaintiffs also contend that their race and national origin are inseparable from their religious beliefs: "Plaintiffs' claims of religious, race and national origin [discrimination] are 'so interrelated as to be indistinguishable.'" *Id.* at 7 (quoting *Sasannejad v. Univ. of Rochester*, 329 F. Supp. 2d 385, 391 (W.D.N.Y. 2004)). Plaintiffs also note that the FAC alleges that "Defendant actively and repeatedly *segregated* the black Somali Muslim employees." *Id.* (citing FAC ¶¶ 47, 52, 63, 70). "Segregating Somali black employees into a single area for singular scrutiny is racially discriminatory," Plaintiffs contend, "even if the Defendant *also* had a religiously discriminatory purpose." *Id.* Plaintiffs add that they are "not blind to the American history of racial segregation." *Id.*

Plaintiffs' argument is unpersuasive. Their Title VII claim, to the extent it is intended to include race and national origin discrimination, fails to meet even the minimal pleading standard Plaintiffs claim is applicable in employment discrimination cases. Plaintiffs contend that in order to state a claim for race or national origin discrimination under this minimal pleading standard, they need only allege that Ariens terminated their employment or otherwise

discriminated against them in the conditions or terms of their employment because of their race and national origin. But the FAC does not even offer that conclusory allegation in support of Plaintiffs' Title VII claims. Indeed, there is no allegation of discrimination on the basis of race or national origin in any of the Title VII counts or any of the factual allegations on which they are based. For Count I, the FAC alleges that Ariens violated Title VII by

> (1) subjecting Plaintiffs to harassment, intimidation, threats and disciplinary action for exercising their sincerely-held religious beliefs, (2) revoking the original reasonable accommodation of permitting Plaintiffs to take short, unscheduled breaks during their shifts to perform their obligatory prayers, and not providing an alternative reasonable accommodation that would have enabled Plaintiffs to adhere to their sincerely-held religious beliefs and practices, even though such an accommodation would not have interfered with business operations, and (3) terminating Plaintiffs' employment or placing them on track for eventual termination when they insisted on adhering to those beliefs and practices.

FAC ¶ 93. Although each of the Plaintiffs are identified in the FAC as an "American Black Muslim of Somali national origin," there is no allegation in Count I or in any of the 91 preceding allegations that are re-alleged and incorporated by reference that Ariens acted against them in any way on account of their race or national origin. On their face, the factual allegations assert only that Ariens violated Title VII by revoking the accommodation it had previously granted for Plaintiffs to take work breaks for prayer, took steps to insure that Plaintiffs did not take unauthorized breaks for that purpose, and imposed discipline up to and including termination when they did. That is not the same as saying that Ariens discriminated against Plaintiffs on account of their race or national origin.

Only the "jurisdiction and venue" section of the FAC mentions discrimination on the basis of race and national origin, and even there the FAC does not allege that Ariens actually discriminated against Plaintiffs on those bases; instead, it alleges that "Plaintiffs' claims for discrimination on the basis of race, religion and national origin, retaliation, and hostile work

environment in violation of Title VII are brought pursuant to 42 U.S.C. § 2000(e) *et seq*." *Id.* ¶ 3. There is no question, however, that the court has jurisdiction over claims that Ariens discriminated against Plaintiffs because of their race or national origin. The question is whether the FAC alleges "enough facts to state [such] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. It does not.

A careful reading of the background allegations of the FAC, as well as those specific to the Title VII counts, leaves one at a loss as to the relevance of Plaintiffs' race or national origin to their Title VII claims. The entire focus of the FAC is on the denial of a religious accommodation. While there may be cases in which the religion, race, and national origin of the plaintiff are intertwined and inseparable so as to be indistinguishable, this is not such a case based on the allegations of the FAC. Plaintiffs allege no facts that make plausible their claim that this case involves more than a dispute over whether the religious accommodation they demand is required by Title VII. As the Court noted in *Iqbal*, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678–79. And Plaintiffs' allegations of religious discrimination cannot, without anything more, unlock the doors of discovery on allegations of race and national origin discrimination. As to their Title VII counts, Plaintiffs do not offer even "a formulaic recitation of the elements of the cause of action" or "conclusory statements." *Id.* at 678. Consequently, they have failed to state a claim.

Finally, the FAC's allegations that Ariens "segregated" Plaintiffs, stripped of their racist connotations, amounts to nothing more than allegations that Ariens management met with its Muslim employees several times after Ariens decided it would no longer accommodate their prayer schedule to inform them of its decision and explain when the change would go into effect and what it would mean. FAC ¶¶ 47, 52, 63. Additionally, the FAC alleges that Ariens "also

segregated all Somali Muslim workers, including the Plaintiffs that were still employed, in an apparent but discriminatory attempt to ease the process of enforcing their ban on religious breaks." *Id.* ¶ 70. Although Ariens strenuously denies the allegation that Somali Muslim employees were segregated at work and insists they "worked on varying shifts, lines, and positions throughout Ariens Company," Def.'s Reply Mem., ECF No. 16, at 7 n.3, even if the allegation is true, it does not make Plaintiffs' claim of race or national origin discrimination more plausible, at least not in light of the fact that the reason alleged for the "segregation" was "to ease the process of enforcing the ban on religious breaks." FAC ¶ 70. An allegation that employees were segregated by religion does not make plausible a claim of race or national origin discrimination, especially when the stated reason for the alleged segregation was to monitor the employees' compliance with the new policy prohibiting unscheduled breaks for religious reasons.

In sum, Count I of the FAC states a claim for discrimination in the terms and conditions of Plaintiffs' employment on the basis of Plaintiffs' religion in violation of Title VII. It fails to state a Title VII claim for discrimination against Plaintiffs on account of their race or national origin.

## B. Hostile Work Environment

Count III of the FAC is entitled "Hostile Work Environment in Violation of Title VII." FAC at 16. In addition to re-alleging and incorporating the previous paragraphs, the FAC alleges in support of Count III that Ariens

> subjected Plaintiffs to a hostile work environment in violation of Title VII by (1) subjecting Plaintiffs to harassment, intimidation, threats and disciplinary action for exercising their sincerely-held religious beliefs, (2) revoking the original reasonable accommodation of permitting Plaintiffs to take short, unscheduled breaks during their shifts to perform their obligatory prayers, and not providing an alternative reasonable accommodation that would have enabled Plaintiffs to adhere to their sincerely-held religious beliefs and practices, even though such an accommodation would not have interfered with business operations, and (3) terminating Plaintiffs' employment or placing them on track for eventual termination when they insisted on adhering to those beliefs and practices.

*Id.* ¶ 97 (misnumbered ¶ 43).

To prevail on a hostile work environment claim, a plaintiff must demonstrate that: (1) the work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on the plaintiff's membership in a protected class under Title VII, such as the plaintiff's race, religion or national origin; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Porter v. City of Chi.*, 700 F.3d 944, 955 (7th Cir. 2012); *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009). To the extent Count III is intended to state a claim that Plaintiffs were subjected to a hostile work environment because of their race or national origin, it fails for the same reason Count I fails to state a claim for discrimination on that basis. There are no facts alleged in support of Count III that make plausible the claim that Plaintiffs were subjected to any harassment on account of their race or national origin. Ariens argues, however, that Count III also fails to state a hostile work environment claim based on Plaintiffs' religion.

Ariens argues that of the three "conclusory allegations" asserted in Count III, only the first—that Ariens "subject[ed] Plaintiffs to harassment, intimidation, threats and disciplinary action for exercising their sincerely-held religious beliefs"—"involves the type of conduct recognized by the federal courts as giving rise to a claim for a hostile work environment." Def.'s Mem. in Supp. at 4. And because the FAC "fails to allege specific facts to support its conclusory assertion of a hostile work environment," Ariens argues that claim should be dismissed in full. *Id.* at 4–5. Ariens also contends that the "only plausible allegation of religious-based harassment involves a single instance of Ariens' management calling the Plaintiffs 'troublemakers.'" *Id.* at 6 (citing FAC ¶ 79). Citing *Porter*, 700 F.3d at 956, Ariens argues that "[t]his isolated and

relatively mild comment is neither sufficiently severe, nor sufficiently pervasive to create an actionable hostile workplace." Def.'s Mem. in Supp. at 6.

Plaintiffs' conclusory allegation that they were subjected to "harassment, intimidation, threats and disciplinary action for exercising their sincerely-held religious beliefs" is insufficient to state a claim for hostile work environment. This is because "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). When one looks beyond Plaintiffs' conclusions to the specific factual allegations underlying Plaintiffs' claim, it is clear that the FAC's conclusory allegation that Ariens subjected Plaintiffs to "harassment, intimidation, threats and disciplinary action" is simply Plaintiffs' characterization of Ariens decision to rescind the accommodation it had previously allowed and management's effort to implement that decision. Indeed, one struggles to discern how Plaintiffs' religious discrimination claim in Count I differs from their hostile work environment claim in Count III. The language used in the underlying allegations is identical. *Compare* FAC ¶ 93, *with* ¶ 97 (misnumbered ¶ 43).

There is no suggestion that Ariens denigrated Plaintiffs' religion or treated them differently from any other employee except as necessary to insure they complied with the new policy, a concern that for obvious reasons did not exist with non-Muslim employees. Ariens simply concluded that the accommodation it had previously allowed was unduly burdensome. *Cf. Huri v. Office of Chief Judge of Circuit Court of Cook Cty.*, 804 F.3d 826, 829–30 (7th Cir. 2015) (Muslim employee's supervisor was unfriendly from moment they met; repeatedly referred to other colleagues and herself as "good Christians" or "good churchgoing Christians;" instructed coworker to work with "good Christian" rather than plaintiff, "who was evil;" said a prayer "in the

name of Jesus Christ;" falsely criticized plaintiff and made false misconduct charge against her; and screamed at plaintiff and subjected her to greater scrutiny and different rules than her co-workers).

Yet, the fact that the two claims overlap does not mean that both cannot be asserted. Plaintiffs allege that Ariens unreasonably revoked the accommodation for their prayer schedule that it had assured them it would provide when it hired them, even though the accommodation "worked smoothly" and placed "no burden of any kind" on Ariens' business. FAC ¶¶ 38, 43–44. Assuming, as is required in deciding a motion to dismiss, that these allegations are true, then Ariens' decision revoking the accommodation amounts to religious discrimination against Plaintiffs. Ariens' efforts to prohibit Plaintiffs from praying as required by their religion, which included warnings, discipline, monitoring their restroom breaks, providing false information about their eligibility for unemployment benefits, and eventually terminating their employment could amount to the kind of severe and pervasive conduct needed to demonstrate a hostile work environment. Under these circumstances, the hostile work environment claim of Count III likely rises or falls with the religious discrimination claim of Count I. In other words, if Ariens' decision to rescind the accommodation was justified for business reasons, then its efforts to implement its new policy in the face of the Plaintiffs' resistance would, at least for the most part, be deemed reasonable and nondiscriminatory. If, on the other hand, there was no business justification for rescinding the accommodation, then Ariens' decision to do so and management's actions in prohibiting prayer breaks and taking steps to enforce its new policy, given the importance of prayer in the Muslim religion, may amount to the kind of harassment and intimidation hostile work environment claims are intended to redress. For these reasons, Ariens' motion to dismiss Count III in its entirety will be denied. To the extent Count III is intended to

assert a hostile work environment claim based on race or national origin discrimination, however, Ariens' motion is granted.

## C.  Section 1981

Finally, Count IV (misnumbered Count V) of the FAC alleges a violation of Section 1 of the Civil Rights Act of 1866, 14 Stat. 27, 42 U.S.C. § 1981.  Section 1981 prohibits racial discrimination in the making and enforcement of private contracts.  *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).  Section 1981 has also been held to protect from discrimination "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). However, Section 1981 does not protect against discrimination based on one's religion. *Lubavitch-Chabad of Ill., Inc. v. Northwestern Univ.*, 772 F.3d 443, 447 (7th Cir. 2014).  Ariens argues the FAC has failed to allege a plausible Section 1981 claim and that Count IV should therefore be dismissed.

Count IV of the FAC re-alleges and incorporates all of the preceding paragraphs which the court has already determined do not state a plausible claim for discrimination based on the race or national origin of Plaintiffs.  In addition to these allegations, however, Count IV of the FAC includes two additional allegations.   Here, Ariens is alleged to have

> violated 42 U.S.C. § 1981 by subjecting Plaintiffs to intentional discrimination by harassing, intimidating, threatening, implementing disciplinary action, and by terminating Plaintiffs or placing them on track for eventual termination on the basis of their race, ethnic background and ancestry, which had the purpose and/or effect of denying Plaintiffs full and equal access to the making of any employer-employee contractual relationship between Plaintiffs and Defendant.

*Id.* ¶ 101 (misnumbered ¶ 45).   Count IV of the FAC also alleges that "Defendant's above-described conduct was discriminatory based on Plaintiffs' race, ethnic background and ancestry and was motivated by racial animus in violation of 42 U.S.C. § 1981." *Id.* ¶ 103

(misnumbered ¶ 47). Plaintiffs contend that these allegations, combined with the preceding allegations that are re-alleged and incorporated into Count IV, are sufficient to state a claim under 42 U.S.C. § 1981.

It is true that in support of its Section 1981 claim, the FAC has finally alleged that Ariens was motivated by racial animus and engaged in racial discrimination, an allegation entirely missing from the Title VII claims. But the allegations of racial animus and discrimination, like those of discrimination based on ethnic background and ancestry, are conclusory and precisely the type of allegations that *Iqbal* and *Twombly* said should be disregarded in assessing the plausibility of a claim when deciding a Rule 12(b)(6) motion to dismiss. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 886 (7th Cir. 2012) ("We agree with the district court that these allegations of intent are the sort of conclusory allegations that are insufficient under *Iqbal*."). Just as the court did in *McReynolds*, it is helpful to compare the FAC to the complaint that was rejected in *Iqbal*.

*Iqbal*, it is important to recall, was an action brought by a Muslim Pakastani pretrial detainee against current and former government officials, alleging that they unconstitutionally confined him under harsh conditions because of his religion, race, and/or national origin. 556 U.S. at 669. The Court granted *certiorari* to review the lower courts' denial of the defendants' motion to dismiss on grounds of qualified immunity. *Id*. at 670. After reaffirming the two "working principles" that underlay its decision in *Twombly*, the *Iqbal* Court began its analysis "by identifying the allegations in the complaint that are not entitled to the assumption of truth." 556 U.S. at 680. These included the allegations that "petitioners knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest;" that "Ashcroft was the principal architect of this invidious policy and that Mueller was

instrumental in adopting and executing it." *Id.* at 680–81 (internal quotes, brackets and citations omitted). "These bare assertions," the Court stated, "much like the pleading of conspiracy in *Twombly*, amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, . . . namely, that petitioners adopted a policy 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 681 (internal quotations and citations omitted). "As such," the Court concluded, "the allegations are conclusory and not entitled to be assumed true." *Id.*

The Court made clear that it was not rejecting "these bald allegations on the ground that they are unrealistic or nonsensical." *Id.* "It is the conclusory nature of respondent's allegations," the Court explained, "rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.*

The Court then turned to the factual allegations of the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* Here, the Court noted that "the complaint alleges that "the FBI, under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11 . . . . It further claims that the policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." *Id.* (internal quotations, brackets and citation omitted). "Taken as true," the Court observed, "these allegations are consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin." *Id.* "But given more likely explanations," the Court concluded, "they do not plausibly establish this purpose." *Id.*

The "more likely explanations," the Court went on to explain, were the events of "the September 11 attacks." *Id.* at 682. These attacks "were perpetrated by 19 Arab Muslim hijackers who counted themselves members in good standing of al Qaeda, an Islamic fundamentalist group." *Id.* The Court found it unsurprising that "a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Id.* The Court noted that on the facts alleged in the complaint, "the arrests Mueller oversaw were likely lawful and justified by his nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts." *Id.* "As between that 'obvious alternative explanation' for the arrests, . . . and the purposeful, invidious discrimination respondent asks us to infer," the Court concluded, "discrimination is not a plausible conclusion." *Id.*

The same is true in this case. In the face of the conflict alleged between Ariens' change in policy and Plaintiffs' demands that they be allowed to take additional and unscheduled breaks as a religious accommodation for their Muslim faith, the conclusory allegations that Ariens is acting out of animus toward Plaintiffs' race, ethnic background, or national origin are insufficient to create a plausible claim under Section 1981. There are no allegations that Ariens' management or other employees made racial or ethnic slurs, or treated those American Black Muslims of Somali national origin who accepted the new policy any differently than other non-Black or non-Somali employees. Nor is there any allegation that Ariens treated other African-American employees in a discriminatory manner. It is Ariens' decision to rescind the accommodation for Plaintiffs' prayer schedule that accounts for Plaintiffs' conflict with Ariens. As between this

obvious alternative explanation for the conflict, which the FAC explicitly alleges, and the purposeful invidious discrimination Plaintiffs seek to infer, racial or ethnic discrimination is not a plausible conclusion.

Suggesting that *Iqbal* and *Twombly* do not apply to employment discrimination cases, Plaintiffs cite *Luevano v. Wal-Mart Stores*, which overturned the district court's dismissal of a complaint alleging sex discrimination and retaliation by the pro se plaintiff's employer. 722 F.3d at 1030. In *Luevano*, the court explicitly recognized "some unresolved tension" between *Twombly* and *Iqbal* and the Court's earlier decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which held that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Luevano*, 722 F.3d at 1028; *see also McCauley,* 671 F.3d at 620–29 (Hamilton, J., dissenting). After cutting through a series of procedural and jurisdictional roadblocks, the court in *Luevano* held that the district court had erred in dismissing the complaint on a finding that the plaintiff "did not plead facts sufficient to show that her co-worker harassed her because of sex." 722 F.3d at 1028. "Even if that was correct," the court noted, "the district court failed to address Luevano's viable claim that her supervisor discriminated against her because of her sex and her claim that her supervisor subjected her to a hostile work environment . . . . Luevano's first complaint pled facts consistent with supervisor-based harassment that, under the lenient pleading standards for pro se plaintiffs, were sufficient to state a claim that her supervisor harassed her because of her gender." *Id.* at 1028–29.

*Luevano* is distinguishable in several important respects from this case. First, the plaintiff in *Luevano* was pro se. The court expressly noted "[a]s a preliminary matter, the pleading standards for pro se plaintiffs are considerably relaxed, even in the wake of *Twombly* and

*Iqbal.*" *Id.* at 1027 (citations omitted). Here, by contrast, Plaintiffs are represented by competent counsel. Second, the factual allegations of the complaint in *Luevano*, as recounted by the court, were more than mere legal conclusions:

> She clearly pled that her supervisor chose not to remedy the situation because her supervisor and Luevano's co-worker were both males and her supervisor wanted to help him just as he helps his brother. She also attached documents, not required by the concise form provided by the Northern District of Illinois, indicating that she suffered medical consequences as a result of the alleged intimidation and harassment by her manager. Luevano thus sufficiently pled the facts necessary to state a claim that she was harassed by her supervisor.

*Id.* at 1029. Finally, unlike this case and *Iqbal*, no alternative explanation for the adverse employment actions alleged by the plaintiff in *Luevano* appeared in the complaint. An inference that the supervisor was motivated by the plaintiff's gender might be reasonable when no other explanation for his alleged mistreatment of her was apparent. But in this case, essentially the entire focus of the complaint is Ariens' decision to rescind the religious accommodation and management's efforts to implement and enforce the change in policy. Plaintiffs may dispute Ariens' conclusion that accommodating unscheduled prayer breaks over the work day imposes an undue burden on its business and other employees. But its conclusion is not so irrational as to suggest, absent more, that Ariens' actions must have been motivated by animus toward Plaintiffs' race or ethnic background.

In any event, notwithstanding the "unresolved tension" it has noted between *Twombly* and *Iqbal*, on the one hand, and some of the Court's previous decisions, on the other, the Seventh Circuit has rejected the argument that the *Twombly*/*Iqbal* pleading standard does not apply to employment discrimination cases. *See McReynolds*, 694 F.3d at 885 (rejecting suggestion that reliance on *Iqbal* in Title VII case is misplaced); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (applying *Twombly*/*Iqbal* pleading standard to Title VII claims). To be sure, in

applying that standard, the Seventh Circuit has held that conclusory allegations such as "I was subjected to sexual harassment," *Tate v. SCR Medical Transportation*, 809 F.3d 343, 345 (7th Cir. 2015), or "[I] was fired because of [my] age," *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017), suffice when the plaintiff is pro se, the claim is straightforward, and no obvious alternative explanation is apparent. But none of those exceptions apply here. Plaintiffs, as noted, are represented by competent counsel, their claims are not straightforward, and an obvious alternative explanation for the treatment they challenge is not only apparent but is expressly and unequivocally alleged. Under these circumstances, their conclusory allegations of racial and/or ethnic discrimination are insufficient. Ariens' motion to dismiss Plaintiffs' Section 1981 claim will therefore be granted.

## CONCLUSION

For the reasons set forth above, Ariens' Rule 12(b)(6) motion for partial dismissal (ECF No. 12) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted as to Plaintiffs' Title VII claims for racial and national origin discrimination in Counts I and III, and as to Plaintiffs' Section 1981 claim in Count IV in its entirety. These claims are dismissed without prejudice. In all other respects, the motion is denied. Ariens' motion to dismiss the original complaint (ECF No. 8) is **DENIED AS MOOT**.

**SO ORDERED** this _____18th_____ day of June, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court - WIED